## In re Anonymous No. 60 D.B. 77

UNKOVIC, *Chairman,* November 3, 1978—

## SUMMARY OF THE CASE

This case was initiated by the office of the disciplinary counsel against [respondent], a practicing attorney, with offices in [A] County, Pa. Petitioner alleged that respondent had violated six disciplinary rules in connection with her representation of one [B], who was indicted on criminal charges in

the United States District Court for the [C] District of Pennsylvania. Also, indicted along with [B] was [D] who retained the services of attorney [E], also of [A] County.

The main thrust of the charges brought by petitioner are that respondent, along with [E], participated in and was part of an arrangement whereby [B] paid to [D] a certain sum of money on a weekly basis between the time of indictment and the time of trial and that the purpose of the payments was to prevent [D] from cooperating with the government in the forthcoming trial.

Subsequent to the conviction of [B] and [D], the government became aware that the payments had been made and began an investigation into the matter. [E] was interviewed and gave two false statements to the F.B.I. agents concerning his involvement in the payment arrangement and petitioner argues that respondent became aware that these false statements had been given but did nothing to inform the government of the truth. As a result of the investigation, respondent was indicted in the United States District Court on charges of obstruction of justice. The government subsequently agreed to dismiss the indictments with the understanding that respondent would plead guilty to the violation of the Act of June 25, 1948, 62 Stat. 701, 18 U.S.C.A. §401(1),(2), which is basically a charge of contempt of court. Respondent did plead guilty and was fined the sum of $1,000.

All the charges brought by petitioner in this proceeding relate to one of three areas of respondent's conduct (1) participating in the scheme to arrange for payments to be made to [D] by her client, [B], for the purpose of preventing [D] from cooperating with the government; (2) in failing to advise the government that [E] had submitted false state-

ments concerning the nature and purpose of the payments scheme; (3) in failing to report [E's] improper conduct to the disciplinary board.

Your hearing committee finds that respondent's conduct was in violation of Disciplinary Rule 1-102(A)(4), (5), and Disciplinary Rule 7-102(A)(7).

Based on the foregoing, your hearing committee recommends that respondent be subjected to a private reprimand by the disciplinary board pursuant to Pa.R.D.E. 204(5).

## STATEMENT OF CASE

On May 9, 1978, the hearing committee heard testimony on charges against respondent, [ ] of [A] County. Respondent was charged with violating the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation.

(b) D.R. 1-102(A)(5)—dealing with conduct that is prejudicial to the administration of justice.

(c) D.R. 1-102(A)(6)—dealing with any conduct that adversely reflects on his fitness to practice law.

(d) D.R. 1-103(A)—dealing with a lawyer possessing unprivileged knowledge of a violation of D.R. 1-102 and failure to report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

(e) D.R. 7-102(A)(3)—dealing with concealing or knowingly failing to disclose that which the lawyer is required by law to reveal.

(f) D.R. 7-102(A)(7)—dealing with counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent.

## FINDINGS OF FACT

1. In May, 1974, respondent represented [B] in regard to various criminal charges relating to interstate transportation of pornographic material which had been filed against him and [D] and which were contained in an indictment captioned United States of America v. [B] and [D], No. [   ], Criminal, United States District Court for the [C] District of Pennsylvania.

2. [D], who managed a theater owned by [B], was fired by [B] in June, 1974, and in an effort to get [D's] job back, [E], who represented [D], agreed to try to arrange a meeting with [B] to convince [B] to continue [D] in [B's] employ pending the trial, as was customary in cases of this nature.

3. In late June, 1974, respondent was contacted by [E] at which time [E] requested that respondent arrange a meeting between [B] (the respondent's client), respondent, [D], and [E]. [E] did not tell respondent his reasons for wanting the meeting.

4. A meeting was held in [E's] law office on July 1, 1974, and was attended by respondent, [B], [E], [D], and [F], a business associate of [B].

5. At that meeting, [E] asked [B] to give [D] his job back until the conclusion of the Federal criminal trial. [E] also told [B] that if [B] would not agree to place [D] back on the payroll, [D] would approach the Federal authorities prosecuting the case against [B], and offer his cooperation in regard thereto. [B] and [F] told [E] that they would discuss [E's] proposal and let him know later.

6. At no time during the meeting did respondent lodge any protest in regard to the idea of making the proposed payments to [D] nor did she say anything at all.

7. On the following day, July 2, 1974, respondent called [E] to inform him that her client, [B], had agreed to the proposed payments to [D], in the net amount of approximately $100 per week, and that no work was to be performed by [D] in return for the payments, and that [D] was to stay away from [B's] theater. In addition, [E] requested that the weekly checks payable to [D] be forwarded to [E's] law office since [D] had no permanent address.

8. Thereafter, and continuing until late January, 1975, or early February, 1975, checks in the amount of $100.69, payable to [D] and drawn on the account of one of [B's] corporations were forwarded on a weekly basis, by [B] to [E's] law office.

9. In November, 1974, a Federal jury returned guilty verdicts on all counts against [D] and [B].

10. In May, 1975, [D], under a grant of immunity, testified before a Federal grand jury concerning the payments which had been made to him.

11. In July, 1975, [E] became aware that he might have some serious problems because of [D's] testimony regarding the payments. He met with [G] from the U.S. Attorney's Office and told [G] that the payments to [D] were severance payments.

12. Sometime during the following week, [E] visited respondent at her law office and informed respondent of the content of [D's] testimony before the Federal grand jury, of his conversation with [G], and also advised respondent that, after recently speaking with [B], it was his own recollection, as well as that of [B], that the weekly payments made by [B] to [D] represented severance pay. In response, respondent affirmatively indicated that her understanding of the payments was identical to that of [E] and [B].

13. Thereafter, [E] gave a written statement to

an F.B.I. agent, dated July 14, 1975, and later provided a copy of that same statement to respondent.

14. In the July 14, 1975, statement, [E] made, by his own subsequent admission, several misrepresentations concerning the purpose of the payments previously made to [D], as well as the circumstances under which he, respondent, [B], and [F] had agreed to and arranged for the payments.

15. Sometime in August, 1975, [E] gave a second written statement to the Federal authorities investigating the case which also contained several deliberate misrepresentations concerning the involvement of respondent, [E], [B], and [F] with the weekly payments made to [D].

16. In April, 1976, [E] gave the F.B.I. a third statement which contained no misrepresentations and told the entire story regarding the payments to [D].

17. On or about July 16, 1976, a Federal grand jury for the United States District Court for the [C] District of Pennsylvania returned an indictment, No. [ ], Criminal, against respondent, [B], and [F], which indictment charged respondent with violations of 18 U.S.C.A. §371 (conspiring to commit certain offenses against the United States), Act of June 25, 1948, 62 Stat. 769, 18 U.S.C.A. §1503 (corruptly endeavoring to influence, obstruct, and impede the due administration of justice in a United States District Court), and Act of November 3, 1967, 81 Stat. 362, 18 U.S.C.A. §1510 (endeavoring to obstruct, delay, and prevent the communication of information relating to violations of criminal statutes of the United States to an investigator by means of bribery).

18. Thereafter, the U.S. Attorney's office agreed

to dismiss the indictments in regard to the criminal charges pending against her, in return for respondent's agreement to plead guilty to a superseding information charging her with violation of 18 U.S.C.A. §401(1) and (2) (misbehavior of any person in the presence of a court for the United States or so near thereto as to obstruct the administration of justice, and misbehavior of any of its officers in their official transactions).

19. On November 12, 1976, respondent entered a plea of guilty to a criminal information charging her with violation of 18 U.S.C.A. §401(1) and (2). A fine in the amount of $1,000 was thereupon imposed on respondent.

## DISCUSSION

Your hearing committee has found respondent to be in violation of several sections of Disciplinary Rule 1-102 and Disciplinary Rule 7-102(A)(7). Your committee has found that she did not violate certain other rules as alleged by petitioner which rules involve the duty to disclose information to various authorities. Your committee is of the opinion that the information involved was subject to the attorney-client privilege or to respondent's own right against self-incrimination.

Your hearing committee believes that there is very little dispute as to the facts. On July 1, 1974, respondent attended a meeting at the request of [E], the attorney for [D]. Respondent was at the meeting in her role as attorney for [B]. In attendance at the meeting, in addition to respondent and [E], were [B], [D], and [F]. The purpose of the meeting was not disclosed to respondent prior to the meeting. Unknown to respondent was the fact that the meet-

ing was being held so that [E] could argue the rehiring of [D] by [B], [D] having been discharged as manager of a theater owned by [B]. At the meeting [B] refused to rehire [D] on the grounds that he was dishonest and [E] then stated that if some monetary arrangement was not made between [B] and [D], [D] was going to cooperate with the Federal authorities. Respondent was in attendance at the meeting, although there was no evidence that she actually participated in the discussion. After the meeting, respondent advised her client [B] to consult with his attorney from Cleveland concerning what he should do about [E's] demands. Respondent testified that a day or so later, [B] advised her that he would make weekly payments to [D] and that respondent should so advise [E]. Respondent did advise [E] that payments would be made and an arrangement was made to have the payments paid directly to [E] from one of the corporations that [B] owned. These payments continued up until the time of the appeal from [B's] and [D's] conviction. Respondent continued to represent [B] through the trial and into the appellate stage.

It is clear, therefore, that respondent was aware of the payment arrangement from the time that it was first suggested, that she did not object or advise against it and that she notified [E] that [B] agreed to make the payments and must have been aware that [B] was making the payments on a regular basis. It is also clear, as was later admitted by [E], that the purpose of the payments was to keep [D] from cooperating with the Federal authorities and that the payment scheme was in fact an obstruction of justice.

Your hearing committee has therefore found that respondent was a party to a conspiracy to obstruct

justice and has found her in violation of those disciplinary rules which cover this type of conduct.

Your committee, however, believes that respondent was not obligated to report the payment scheme to the authorities or to the disciplinary board because the information she possessed was obtained by her as the attorney for [B] and was subject to the attorney-client privilege and therefore the committee has not found her in violation of those rules which require the reporting of unprivileged information.

Subsequent to the conviction of her client, the government began an investigation into the fact that payments had been made, as previously described. During the investigation, [E] gave two statements to the F.B.I., in which it was stated that the payments made to [D] were severance pay. At the time that [E] gave the first of these two statements to the F.B.I., he met with respondent and advised her as to the contents of the statement so that respondent became aware that [E] was providing false and misleading information to the government. (Your committee feels that the evidence does not warrant a finding that respondent was provided with a copy of the second statement.) As a result of the investigation, respondent was indicted on obstruction of justice charges, which were later dropped and instead she pleaded guilty to a contempt of court charge.

Your committee has found that respondent did not have a duty to report the truth to the Federal authorities under the circumstances then and there existing. To have done so would have required an explanation as to what occurred at the July 1st meeting, which information was subject to the attorney-client privilege. Secondly to have reported

the truth would have required respondent to incriminate herself and it is not felt that self-incrimination can be required by the disciplinary rules.

In view of the serious misconduct engaged in by respondent, and the fact that your hearing committee has recommended that respondent be subject to private reprimand, your committee feels that the disciplinary board should be aware of the reasoning of the committee in reaching this conclusion.

[Respondent] was admitted to the bar of the Commonwealth of Pennsylvania in 1938. During her 40 years as a practicing attorney, this is the first act of professional misconduct which has been brought to the attention of the committee. . . . [Material deleted pertains to respondent's activities as an attorney and membership in several community organizations.] Your committee has received in evidence, letters from a number of people attesting to [respondent's] devotion to a number of causes without compensation. These letters, having been introduced as exhibits, are available to the board for it's review. In addition, [respondent] is now virtually retired from the practice of law because she is suffering from certain mental and physical conditions which made it difficult, if not impossible, for her to practice law.

Your committee believes that leniency in imposing discipline is more than justified.

## CONCLUSIONS OF LAW

1. Your hearing committee finds that respondent violated Disciplinary Rule 1-102(A)(4) in that she engaged in conduct, the purpose of which was to obstruct justice.

2. Your hearing committee further finds that respondent's conduct was in violation of Disciplinary Rule 1-102(A)(5) in that her participation in the payment scheme was conduct that was prejudicial to the administration of justice, and in fact involved an obstruction of justice.

3. In view of the foregoing findings, your hearing committee feels that it is unnecessary to determine whether the totality of respondent's conduct adversely reflects on her fitness to practice law.

4. Your hearing committee finds that respondent did not violate Disciplinary Rule 1-103(A) because her knowledge of the payment scheme was subject to the attorney-client privilege and her knowledge, if any, of the false and misleading statements that [E] supplied to the F.B.I. involved her own conduct which was then and there under investigation and she was subject to potential criminal prosecution and it is not felt that respondent had an obligation under the disciplinary rule to report the conduct of another which would have the effect of incriminating herself.

5. Your hearing committee finds that respondent did not violate Disciplinary Rule 7-102(A)(3) because her knowledge of the payment scheme was subject to the attorney-client privilege although respondent did have an obligation to advise against it and to withdraw as counsel if her advice was not followed.

6. Your hearing committee finds that respondent did violate Disciplinary Rule 7-102(A)(7), in that she participated in the payment scheme and her conduct must be construed as having assisted and counseled her client in making the illegal and improper payments for the purpose of preventing another from cooperating with the Federal government.

## RECOMMENDED DISPOSITION OF THE CASE

That respondent be found guilty of having violated Disciplinary Rule 1-102(A)(4). That respondent be found guilty of the violation of Disciplinary Rule 1-102(A)(5). That respondent be found guilty of having violated Disciplinary Rule 7-102(A)(7).

In view of the foregoing violations, it is the recommendation of your hearing committee [　] that respondent be given a private reprimand by the disciplinary board without probation pursuant to Pa.R.D.E. Rule 204(5).

### ORDER

And now, November 3, 1978, the report and recommendation of hearing committee [　] dated September 26, 1978, is accepted; and it is ordered and decreed, that the said [respondent] of [A] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board.